# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CONSUMERS FOR AUTO RELIABILITY                )
AND SAFETY,                                    )
1107 9th Street, Suite 625                     )
Sacramento, California 95814,                  )
                                               )
CENTER FOR AUTO SAFETY,                        )
1825 Connecticut Ave., N.W. Suite 330          )
Washington, D.C.   20009,                      )
                                               )     Civ. No.
and                                            )
                                               )
U.S. PUBLIC INTEREST RESEARCH                  )
GROUP, Inc.,                                   )
600 Pennsylvania Ave., S.E.                    )
Washington, D.C.   20003,                      )
                                               )
                          Plaintiffs,          )
v.                                             )
                                               )
FEDERAL TRADE COMMISSION                       )
600 Pennsylvania Ave., N.W.                    )
Washington, D.C.   20580                       )
                          Defendant.           )

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.      Plaintiffs challenge three "Decisions and Orders" issued by Defendant Federal

Trade Commission ("FTC" or "Commission") on December 8, 2016 that permit dealers of

"Certified Pre-Owned" vehicles—i.e. used motor vehicles such as cars, trucks, motorcycles, and

motor homes—to market and advertise such vehicles as "safe," "repaired for safety issues," or

"subject to a rigorous inspection," even when such vehicles are the subject of a pending safety

defect recall required by the National Highway Traffic Safety Administration ("NHTSA"),

without requiring the dealers to remedy those safety defects and instead by disclosing that such

vehicles "may" be subject to such recalls.   The agency's decisions to allow such demonstrably

*unsafe* used vehicles to be sold to the public as "safe," "repaired for safety issues," or "subject to a rigorous inspection" violate Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1), which prohibits "unfair or deceptive acts or practices in or affecting commerce," as well as the agency's own trade regulation rule governing the sale of used vehicles, which provides that "[i]t is a deceptive act or practice for any used vehicle dealer . . . [t]o misrepresent the mechanical condition of a used vehicle[.]"   16 C.F.R. § 455.1(a)(1).   Accordingly, the challenged Decisions and Orders, which constitute interpretative rules and general statements of policy issued by the FTC, are "not in accordance with law," within the meaning of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A).

2.      In addition, the record before the agency demonstrated that the sale of "certified" used cars as "safe," "repaired for safety issues," or "subject to a rigorous inspection," when such vehicles are in fact *not* safe because they are the subject of pending safety recalls, is extremely detrimental to consumers who buy used cars—particularly poor, unsophisticated, and non-English speaking consumers—because it deprives them of the economic value of their purchases, imposes on them the burden of having to find out if the vehicles are subject to recalls and to have the vehicles repaired, and *exposes them and those they invite into their vehicles, as well as the public around them, to the risk of injury or death caused by the defective vehicles.*   Accordingly, the Commission's "Decisions and Orders" are also arbitrary and capricious and an abuse of discretion within the meaning of Section 706(2) of the APA, 5 U.S.C. § 706(2)(A).

## JURISDICTION

3.      This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331.

## PARTIES

4.      Plaintiff Consumers for Auto Reliability and Safety ("CARS") is a national, award-winning non-profit auto safety and consumer advocacy organization. CARS works to save lives, prevent injuries, and protect consumers from auto-related fraud and abuse.   It petitioned the FTC to take action to prevent used car dealers from advertising and marketing used vehicles as "certified" and "safe" when those vehicles are subject to pending safety recalls, and it commented on the proposed decisions that led to the final Decisions and Order at issue in this case.

5.      CARS brings this case on behalf of its Officers and Board Members who are exposed to the increased risk of injury and death, as well as property damage, as a result of the FTC's Decisions and Orders that allow dealers of "certified" used cars to continue to advertise and sell those cars as "safe," "repaired for safety," and "subject to rigorous inspection" when such vehicles are *not* safe because they contain defects that are the subject of pending safety recalls.   As a result of the FTC's Decisions and Orders, used car dealers who previously would not sell such vehicles without repairing them prior to sale are now choosing instead to conform their marketing and sales practices to those sanctioned by the FTC in the Decisions and Orders at issue in this case, and hence will now advertise and sell "certified" used cars as "safe," "repaired for safety," and "subject to rigorous inspection" when such vehicles are *not* safe because they are subject to pending safety recalls, and without repairing them prior to sale. Dealers will do so because if they instead repair all such vehicles prior to sale they will incur additional costs that are not being borne by their competitors as a result of the challenged FTC actions, and will either pay those costs or pass them on to their customers, which will place those dealers at a distinct economic disadvantage vis-à-vis their competitors who can sell comparable vehicles for less.

As a result of used car dealers conforming their conduct to what is permitted by the Decisions and Orders at issue in this case, CARS Officers and Board Members and their family members will be exposed to an increased risk of injury, death, and property damage caused by more unsafe used vehicles with unrepaired safety defects being on the nation's roads and highways each day, and from being passengers in more used cars that are unsafe.   These injuries are present, imminent, and continuing, as millions of used cars subject to safety recalls are sold each year in this country.

6.      These injuries are caused by the FTC's Decisions and Orders at issue in this case which instruct the entire used car dealer industry that the FTC does not consider it a "deceptive or unfair act or practice" for dealers to advertise and sell "certified" used cars subject to safety recalls as   "certified," "safe," "repaired for safety," and "subject to rigorous inspection," as long as the dealers disclose to consumers that such vehicles "may" be subject to a safety recall. These injuries will be redressed if Plaintiffs prevail in this case because the challenged rules and orders will be set aside and fewer used car dealers will continue to sell unsafe vehicles.

7.      Plaintiff Center for Auto Safety ("the Center") is a non-profit membership organization founded in 1970 by Consumers Union and Ralph Nader to advocate for auto safety and economic fairness on behalf of consumers, and to help consumers with defective cars obtain redress for their economic and other damages.   It is the nation's leading consumer advocacy group dedicated to these issues. The Center petitioned the FTC to take action to prevent used car dealers from advertising and marketing "certified" used vehicles as "safe" when those vehicles are subject to pending safety recalls, and it commented on the proposed decisions that led to the final Decisions and Orders at issue in this case. The Center was also heavily involved in

testifying about and presenting evidence in support of the Used Car Trade Regulation Rule which provides that it is a "deceptive act or practice" for used vehicle dealers to "misrepresent the mechanical condition of a used vehicle."   16 C.F.R. § 455.1(a)(1).

8.     The Center brings this case on behalf of its thousands of members who, as a result of the FTC's Decisions and Orders at issue, are exposed to the increased risk of economic and personal injury and even death, as well as property damage, because the FTC's Decisions and Orders allow dealers of "certified" used cars to continue to advertise and sell those cars as "safe," "repaired for safety," and "subject to rigorous inspection" when such vehicles are *not* safe because they contain defects and other problems that are the subject of pending safety recalls. As a result of the FTC's Decisions and Orders, Center members will unwittingly purchase used cars believing them to be safe when in fact they are *not* safe because they are subject to pending safety recalls.   Those members will suffer economic and other injuries as a result because they will have to endure the costs associated with having those vehicles repaired, which can also include having to take time off from work and the loss of transportation for work and personal use, requiring consumers to pay for alternative means of transportation until their vehicles are repaired.   Center members will also be at increased risk of suffering injury, death, property damage, and increased financial burdens, when they unknowingly purchase used vehicles with safety defects that have not been repaired and those defects cause accidents. These injuries are present, continuing, and imminent, as Center members buy used cars on a regular basis.

9.     Center members are also at increased risk of injury, death, and property damage, and attendant financial burdens by being exposed to accidents caused by other defective used cars that, but for the Decisions and Orders at issue in this case, would not be on the roads and

highways, and from being passengers in more used cars that are unsafe.   Used car dealers who previously would not sell such vehicles without repairing them prior to sale are now choosing instead to conform their marketing and sales practices to those sanctioned by the FTC in the Decisions and Orders at issue in this case, and hence will now advertise and sell "certified" used cars as "safe," "repaired for safety," and "subject to rigorous inspection" when such vehicles are *not* safe because they are subject to safety recalls, and without repairing them prior to sale. Dealers will do so because if they instead repair all such vehicles prior to sale they will incur additional costs that are not being borne by their competitors as a result of the challenged FTC actions, and will either have to pay those costs or pass them on to their customers, which will place those dealers at a distinct economic disadvantage vis-à-vis their competitors who will be able to sell their used vehicles for less.   As a result of used car dealers conforming their conduct to what is permitted by the Decisions and Orders issue in this case, Center members will be exposed to an increased risk of injury, death, and property damage caused by more unsafe used vehicles with unrepaired safety defects being on the nation's roads and highways each day. These injuries are present, imminent, and continuing as millions of used cars subject to safety recalls are sold each year in this country.

10.     All of these injuries are caused by the FTC's Decisions and Orders at issue in this case which instruct the entire used car dealer industry that the FTC does not consider it a "deceptive act or practice" for dealers to sell "certified" used cars subject to safety recalls as "safe," "repaired for safety," and "subject to rigorous inspection," as long as the dealers disclose to consumers that such vehicles "may" be subject to a safety recall.   These injuries will be

redressed if Plaintiffs prevail in this case because the FTC's rules and orders will be set aside and fewer used car dealers will continue to sell unsafe vehicles.

11.     Plaintiff United States Public Interest Research Group, Inc. ("U.S. PIRG") is a non-profit membership organization whose mission is to stand up to powerful interests that threaten the public's health and safety, financial security, or right to fully participate in our democratic society.   U.S. PIRG petitioned the FTC to take action to prevent used car dealers from advertising and marketing "certified" used vehicles as "safe" when those vehicles are subject to pending safety recalls, and it commented on the proposed decisions that led to the final Decisions and Orders at issue in this case.

12.     U.S. PIRG brings this case on behalf of its tens of thousands of members nationwide who, as a result of the FTC's Decisions and Orders at issue, are exposed to the increased risk of injury and death, as well as property damage because the FTC's Decisions and Orders allow dealers of "certified" used cars to advertise and sell those cars as "safe," "repaired for safety," and "subject to rigorous inspection" when such vehicles are *not* safe because they contain defects and other problems that are the subject of pending safety recalls.   As the federation of states PIRGs, U.S. PIRG also brings this case for the benefit of its state-based affiliates, in particular Massachusetts Public Interest Research Group ("MASSPIRG"), Connecticut Public Interest Research Group ("ConnPIRG"), and California Public Interest Research Group ("CALPIRG").   As a result of the FTC's Decisions and Orders, U.S. PIRG members will unwittingly purchase used cars believing them to be safe when in fact they are not safe because they are subject to pending safety recalls.   Those members will suffer economic and other injuries as a result because they will have to incur the costs associated with having

those vehicles repaired, which can also include having to take time off from work and the loss of

transportation for work and personal use, requiring consumers to pay for alternative means of

transportation until their vehicles are repaired.   U.S. PIRG members will also be at increased

risk of suffering injury, death, property damage, and increased financial burdens when they

unknowingly purchase used vehicles with safety defects that have not been repaired and those

defects cause accidents.   These injuries are present, continuing, and imminent, as U.S. PIRG

members buy used cars on a regular basis.

13.    U.S. PIRG members are also at increased risk of personal injury, death, property

damage, and attendant financial burdens from being exposed to accidents caused by other

defective used cars that, but for the Decisions and Orders at issue in this case, would not be on

the roads and highways, and from being passengers in more used cars that are unsafe.   Used car

dealers who previously would not sell such vehicles without repairing them prior to sale are now

choosing instead to conform their marketing and sales practices to those sanctioned by the FTC

in the Decisions and Orders at issue in this case, and hence will now sell "certified" used cars as

"safe," "repaired for safety," and "subject to rigorous inspection" when such vehicles are *not* safe

because they are subject to safety recalls, and without repairing them prior to sale. Dealers will

do so because if they instead repair all such vehicles prior to sale they will incur additional costs

that are not being borne by their competitors as a result of the challenged FTC actions, and will

either have to pay those costs or pass them on to their customers, which will place these dealers

at a distinct economic disadvantage vis-à-vis their competitors who will be able to sell their used

vehicles for less.   As a result of used car dealers conforming their conduct to what is permitted

by the Decisions and Orders at issue in this case, U.S. PIRG members and their family members

will be exposed to an increased risk of injury, death, and property damage caused by more unsafe

used vehicles with unrepaired safety defects being on the nation's roads and highways each day.

These injuries are present, imminent, and continuing as millions of used cars subject to safety

recalls are sold each year in this country.

14.     All of these injuries are caused by the FTC's Decisions and Orders at issue in this

case which instruct the entire used car dealer industry that the FTC does not consider it a

"deceptive act or practice" for dealers to sell used cars subject to safety recalls as "certified,"

"safe," "repaired for safety," and "subject to rigorous inspection," as long as the dealers disclose

to consumers that such vehicles "may" be subject to a safety recall.   These injuries will be

redressed if Plaintiffs prevail in this case because the FTC's rules and orders will be set aside and

fewer used car dealers will continue to sell unsafe vehicles.

15.     Defendant Federal Trade Commission is the agency charged by Congress with

ensuring that entities subject to its jurisdiction do not engage in "unfair or deceptive acts or

practices" within the meaning of Section 5 of the FTC Act, and is responsible for issuing the

Decisions and Orders at issue in this action.

### STATUTORY AND REGULATORY FRAMEWORK AND FACTS GIVING RISE TO PLAINTIFFS' CLAIMS FOR RELIEF

**A.      Statutory and Regulatory Framework**

**1.      The Federal Trade Commission Act**

16.     The Federal Trade Commission Act ("FTC Act" or "Act") states that "unfair or

deceptive acts or practices in or affecting commerce" are "unlawful," 15 U.S.C. § 45(a)(1), and

empowers and directs the FTC "to prevent" such acts or practices, *id.* § 45(a)(2).

17.     The FTC Act also provides that the Commission "may prescribe . . . interpretive

rules and general statements of policy with respect to unfair or deceptive acts or practices in or

affecting commerce" within the meaning of Section 5 of the FTC Act.   15 U.S.C. § 57a(a)(1)(A).

**2.**      **The Administrative Procedure Act**

18.      The Administrative Procedure Act provides that a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be – (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."   5 U.S.C. § 706(2).

19.      The term "agency action" is defined as "the whole or part of an agency rule, order . . . or the equivalent or denial thereof[.]" 5 U.S.C. § 551 (13).

20.      The term "rule" means "the whole or part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy," and the term "order" means "the whole or part of a final disposition . . . of an agency in a manner other than rule making." 5 U.S.C. §§ 551(4), (6).

**B.**      **Facts Giving Rise to Plaintiffs' Claims**

**1.**      **The Used Car Rule**

21.      Pursuant to its authority and obligations under the FTC Act in 1984 the Commission promulgated a trade regulation rule stating that "[i]t is a deceptive act or practice for any used vehicle dealer, when that dealer sells or offers for sale a used vehicle in or affecting commerce . . . [t]o misrepresent the mechanical condition of a used vehicle[.]"   16 C.F.R. § 455.1(a)(1) (hereinafter "Used Car Rule").   That regulation remains in effect.

22.      As the FTC long ago explained when it promulgated the Used Car Rule, "[f]or many consumers, the purchase of a used car represents a substantial, necessary investment in a reliable means of transportation."   Introduction to Final Used Car Rule, 49 Fed. Reg. 45,692 (Nov. 19, 1984).   As the agency also observed when it promulgated that regulation, "most

consumers" are relatively "unfamiliar[] . . . with the mechanical operation of an automobile," *id.,* and "[c]onsumers are frequently misled or deceived by affirmative misrepresentations concerning . . . the mechanical condition of used cars. *Id.* at 45,696.

23.     The agency further explained that "[t]he utility of a vehicle as a means of transportation is directly affected by its mechanical condition[,]" and that "[i]n fact, mechanical condition at the time of sale is reported by consumers as the most important factor in reaching a purchasing decision." *Id.* at 45,700.

24.     As the agency explained, "[m]echanical condition information is also important because needed repairs resulting from hidden defects are costly to consumers." *Id.* Putting aside whether the consumer must bear the actual cost of having the defective car repaired, "out-of-pocket costs caused by defects often go beyond the cost of repairs." *Id.* As the FTC explained, "[p]urchasers of defective vehicles" that need to be repaired "can lose their only form of transportation, a loss which may lead to other dislocations, including missed work and loss of wages." *Id.*

25.     As the FTC further acknowledged, "[o]ther costs may be incurred when safety-related defects cause or contribute to accidents that damage property and cause personal injury or death." *Id.*

26.     The agency further concluded that "[t]he impact on the poor from the purchase of a defective used vehicle may be particularly severe[.]" *Id.*

27.     The Commission further found that "[t]he record clearly demonstrates the existence of a substantial information disparity between the buyer and seller in the used car market relating to the mechanical condition of used cars[,]" that "[i]nsofar as mechanical condition is concerned, consumers are dependent, with rare exception, on the seller's

representations to inform them of mechanical condition," that "consumer injury results" from buyer reliance on misrepresentation by the seller that "are inconsistent" "with the actual condition of the car," and that "many dealers . . . misrepresent the mechanical condition of the cars offered for sale." *Id.* at 45,701–02.

28.     Stating that "the Commission finds that mechanical condition information is material to the used car transaction[,]" *id.* at 45,700, and that "[c]onsumers are frequently misled or deceived by affirmative misrepresentations concerning . . . the mechanical condition of used cars," *id.* at 45,696, the agency concluded that "[d]ealer misrepresentations regarding mechanical condition are therefore deceptive acts and practices" within the meaning of Section 5 of the FTC Act, 5 U.S.C. § 45(a)(1).   *Id.* at 45,700.

29.     Therefore, since 1984, pursuant to the Used Car Rule, it has been a "deceptive act or practice for any used vehicle dealer . . . to misrepresent the mechanical condition of a used vehicle" when it sells such a vehicle or offers such vehicle for sale.   *Id.* at 45,725; 16 C.F.R. § 455.1(a)(1).

**2.     The Commission's Recent Decisions That It Is Not A "Deceptive Practice" Under Section 5 of the FTC Act To Advertise And Market "Certified" Used Cars As "Safe" Repaired For Safety Issues," Or  "Subject To A Rigorous Inspection" When Such Vehicles Are Subject To Pending Safety Recalls.**

*a)     Plaintiffs' CarMax Petition*

30.     In recent years, used car dealers have been advertising and marketing "Certified Pre-Owned" vehicles as "safe," "repaired for safety," rigorously inspected, or "certified" as safe, even though such cars are subject to pending safety recalls required by NHTSA under the Motor Vehicle Safety Act, 49 U.S.C. §§ 30101–30183.

31.     Under the Motor Vehicle Safety Act, auto manufacturers are required to recall vehicles that either (1) fail to meet a federal motor vehicle safety standard; or (2) otherwise pose an "unreasonable risk" to safety. 49 U.S.C. §§ 30112(a)(1), 30118(a)-(b).   Most safety recalls fall within the latter category.

32.     According to NHTSA, which administers the Motor Vehicle Safety Act, examples of defects that lead to safety recalls include faulty steering, brakes that fail, components that catch fire, air bags that fail to inflate when needed in a crash, accelerators that stick, stalling in traffic, wheels that fall off, or axles that break.   NHTSA has further explained that "[a]ll safety recalls resulting from defects present an unreasonable risk to safety."   NHTSA Statement (April 4, 2011).

33.     Although it is illegal under the Motor Vehicle Safety Act for a dealer to sell a *new* car that is subject to a pending safety recall, there is no comparable prohibition in that statute with respect to *used* vehicles, and NHTSA lacks authority to require used car dealers to fix such defects prior to sale.   As the General Accounting Office ("GAO") has reported to Congress, "[w]ith over 35 million used cars sold by used and franchised dealerships in the United States . . . alone, this could pose a significant risk to the safety of millions of vehicle drivers, and may have a negative impact on recall completion rates."   U.S. GOV'T ACCOUNTABILITY OFFICE, GAO-11-603, AUTO SAFETY: NHTSA HAS OPTIONS TO IMPROVE THE SAFETY DEFECT RECALL PROCESS, 29 (June 2011).

34.     On June 23, 2014, Plaintiffs CARS, the Center, U.S. PIRG, and several other consumer protection organizations petitioned the FTC to remedy this problem with respect to CarMax—the nation's largest retailer of used cars.   As explained in that petition, CarMax advertises on its website, on television, in newspapers, and at its dealerships that each of the used

vehicles it offers for sale are "CarMax Quality Certified" and has undergone a rigorous "125+ point inspection."   Petition by CARS, *et al.* (June 23, 2014).   However, as explained by Plaintiffs, "CarMax fails to ensure that safety recalls are performed prior to selling used cars to consumers" and its "Certified Quality Inspection" does not include fixing any such defects. *Id.* As the Plaintiffs further explained, "[i]t is inherently deceptive for an auto dealer to represent that its vehicles have passed a rigorous inspection, while failing to take even the most basic step of checking the vehicle's safety recall status in order to identify known safety defects that have triggered a federal safety recall, and ensuring that the safety recall repairs have been performed, prior to selling the vehicle to a consumer." *Id.*

35.   In their Petition, the Plaintiffs explained that the practice of selling used cars as "certified" and subject to a rigorous inspection, when those cars are subject to an open safety recalls is "dangerously defective, since [it] tend[s] to lull car buyers into a false sense of security regarding the safety of used vehicles . . .." *Id.* at 2.

36.   In response to Plaintiffs' CarMax Petition, the FTC's Associate Director for Financial Practices, stated that he took "very seriously the concerns detailed [in the Petition], that "[f]or many consumers, the purchase, financing, or leasing of a motor vehicle is one of the most expensive and complicated financial transactions they will ever complete," and that "[t]hus, protecting these consumers is a high priority for the FTC."   Letter from James Reilly Dolan to CARS et al. (Aug. 26, 2014).   The FTC official further explained that, as a result, the agency was "actively engaged in enforcement and policy efforts in this area."   *Id.*

> b)   *The FTC's settlements with Jim Koons Management Company, General Motors, and Lithia Motors*

37.     On January 28, 2016, the Commission announced that General Motors Company, Jim Koons Management, and Lithia Motors Inc. which all sell "Certified Pre-Owned" vehicles had "agreed to settle separate FTC administrative complaint allegations that each touted how rigorously they inspect their cars, yet failed to disclose that some of the used cars they were selling were subject to unrepaired safety recalls." FTC Press Release (Jan. 28, 2016).   The FTC stated that Jim Koons Management, with 15 dealerships in the Mid-Atlantic region, and Oregon-based Lithia Motors Inc., which has more than 100 stores in the West and Midwest, "are two of the nation's largest used car dealers."   *Id.* Jessica Rich, Director of the FTC's Bureau of Consumer Protection informed the public that because "[s]afety is one of the biggest considerations for consumers shopping for a car," "*companies touting the comprehensiveness of their vehicle inspections need to be straight with consumers about safety-related recalls, which can raise major safety concerns.*"   *Id.* (emphasis added).

38.     On February 3, 2016, the FTC published in the Federal Register notices of proposed settlements of draft complaints against the three used car dealers for advertising and marketing "certified" used cars as "safe," "repaired for safety issues," or "subject to a rigorous inspection," when such cars are subject to pending safety recalls mandated by NHTSA.   81 Fed. Reg. 5751–56 (Feb. 3, 2016).   As alleged by the draft complaints, in connection with the marketing or advertising of used motor vehicles, the three companies have "represented, directly or indirectly, expressly or by implication, that used motor vehicles [they] sell[] have been subject to rigorous inspection, including for safety issues," and that "[i]n numerous instances in connection" with those representations, the companies have "failed to disclose, or disclose

adequately, that used vehicles it advertises *are* subject to open recalls for safety issues." *See, e.g.* FED. TRADE COMM'N, *In the Matter of Jim Koons Management Company*, 152-3104, 5 (emphasis added).   The draft complaints further stated that these practices constitute deceptive acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45(a).   *Id.*

39.     As explained by the FTC, "[i]n numerous instances" when each of these three companies "advertised certified used vehicles that are subject to open recalls for safety issues, it provided *no accompanying clear and conspicuous disclosure of this fact*[,]" which the FTC regards as a deceptive act or practice under section 5 of the FTC Act.   81 Fed. Reg. at 5752, 5754, 5755 (emphasis added).

40.     The FTC proposed settling these three complaints by allowing the dealers to *continue* to advertise and market used cars as "safe," "repaired for safety issues," or "subject to a rigorous inspection," when those cars are subject to a pending safety recall, without requiring the dealers to remedy the defect, as long as the dealers included a written disclosure that the vehicle "may" be subject to recalls for safety issues that have not been repaired and information about how the consumer can find out such information.   *See, e.g.,* 81 Fed. Reg. 5751.

41.     Pursuant to the FTC's rules of practice, 16 C.F.R. § 2.34, the agency provided interested persons 30 days to comment on the proposed settlements.   *See, e.g.,* 81 Fed. Reg. at 5754.

42.     All of the Plaintiffs commented on the proposed settlements and opposed allowing used car dealers to continue to sell "certified" used vehicles as "safe," "repaired for safety," or subjected to a "rigorous" inspection without first repairing any defects subject to a pending recall.

43.     Plaintiffs CARS and U.S. PIRG explained that the proposed settlements would "do more harm than good," as they could "encourage even more unethical and unscrupulous car dealers to engage in reckless practices and play 'used car roulette' with the public's safety." Comments of CARS, et al. (Feb. 29, 2016) at 2.   They explained that "[b]ecause of the way auto manufacturers and dealers advertise and promote 'certified' vehicles, they create reasonable expectations that the vehicles are safe and free from unrepaired safety defects," and that "[r]ecent nationwide polling found that a whopping 92% of respondents agreed that when a car is advertised by a dealer as having passed a 125-point inspection, they would expect it to be safe." *Id.* at 10.

44.     As to the proposed required disclosure that the used vehicles "may" be subject to recalls, these Plaintiffs explained that "[s]uch a diffuse form of disclosure, appearing in generalized advertising, regardless of whether an individual vehicle has an unrepaired recall or not, is virtually meaningless," and "could also be easily dismissed by the claim [by the dealer that] 'we have to put that notice in all our ads, and on all our cars."  *Id.* at 3.   Plaintiffs further warned that "the proposals could require consumers – if they do happen to see the disclosures and actually read them – to make life-or-death decisions, sometimes under pressure, with little time to deliberate, on the basis of incomplete information."  *Id.* at 7.

45.     CARS and U.S. PIRG further explained that the proposals "do not account for the terrible, but very real, possibility that consumers may purchase a vehicle with the intent to have it repaired, only to be injured or killed before they have an opportunity to have the repairs performed[,]" and provided concrete examples of individuals that had been killed within days or even hours of being sold or loaned an unsafe car.  *Id.*   These Plaintiffs also explained that under the FTC's proposals "some consumers may be led to believe they can readily obtain repairs, only

to discover – after purchase – that no repair parts are available, or the manufacturer has not devised a fix, leaving them stuck with an unsafe vehicle."   *Id.* at 8.

46.    CARS and U.S. PIRG further explained that permitting this practice "would expose particularly vulnerable used car buyers to being targeted for sales of cars with lethal safety defects[,]" and that the proposed settlements "would particularly jeopardize the safety of consumers who are not proficient in reading legalistic English, who are illiterate, or who are recent immigrants, young people, first-time car buyers," and any consumer that has not stayed informed about recent auto safety defects and recalls.   *Id.* at 12.   They further explained that "[l]ow-income consumers and car buyers with credit problems would be particularly vulnerable," because dealers often steer such consumers to particular vehicles, telling them that these are the only cars on the lot that the buyers are qualified to buy.   *Id.*

47.    Plaintiffs emphasized that dealers are in a better position than individual consumers to ensure that safety recall repairs are performed, that many consumers live a long distance from the closest dealership of a particular make of car, and that consumers "may also have difficulty getting time from work or lose income in order to drive a vehicle to a new car dealership for repairs[.]"   *Id.* at 9.   They pointed out that, "[a]ccording to the GAO, only approximately 70% of recalled vehicles are repaired[,]" and that, "[a]ccording to NHTSA, an average of 25% of recalled vehicles are left unrepaired every year."   *Id.* at 10.   Therefore, Plaintiffs explained, once the car leaves the lot, the likelihood of it being repaired "plummets significantly – increasing the risk to owners, their passengers, and the general public."   *Id.*

48.    CARS and U.S. PIRG pointed out that the Commission's proposed settlements would also undermine existing practices in the industry, whereby particular manufacturers and dealers do not allow the sale of used cars subject to safety recalls.   *Id.* at 13–14.

49.     Plaintiff Center for Auto Safety similarly commented that the three proposals would place consumers at significant economic and personal risk. Comments of Center for Auto Safety (Feb. 29, 2016). Like CARS and U.S. PIRG, it also pointed out that the proposed settlements could undercut existing practices in the industry by dealers who have publicly committed to *not* selling a used car that is subject to an open safety recall.   *Id.* at 3.   It explained that "[i]f the proposed orders are finalized in their current form a precedent will be set[,]" and that the other manufacturers and dealers would likely opt for the minimum disclosure requirement sanctioned by the Commission, rather than continue to repair used cars subject to recalls. *Id.* at 5.

50.     Members of Congress also opposed the FTC's proposed settlements. By letter dated July 14, 2016, Senators Richard Blumenthal, Charles Schumer, Edward Markey, Bill Nelson, and Richard Durbin informed the Chair of the FTC and the Administrator of NHTSA of their "serious safety concerns" regarding the proposed settlements, stating that they believe the proposals "would establish an anti-consumer, anti-safety precedent with far-reaching policy implications." Letter to Dr. Mark Rosekind and Edith Ramirez (July 14, 2016). The Senators further stated that the proposals "would allow dealers to continue committing the same wrongdoing that was the impetus for the Commission's actions[,]" and that the disclosure that used vehicles "may" be subject to safety recalls "arguably amounts to nothing more than a legal disclaimer that could absolve dealers from their responsibilities and would likely do little, if anything, to meaningfully convey to consumers the existence of an open recall and dissuade them from purchasing such vehicles due to their safety risks." *Id.*   The Senators emphasized that "[t]he sale of any car with an unrepaired safety recall is a threat to public safety."   *Id.*

51.     By letter dated September 12, 2016, Representative Janice Schakowsky, then

Ranking Member of the House Subcommittee on Commerce, Manufacturing, and Trade,

informed the Chair of the FTC that the proposed settlements "allow the auto dealers to continue

their misleading advertising practices[.]"   Letter to Edith Ramirez, 1 (Sept. 12, 2016).   She

further emphasized that "[n]ormal consumers assume that the term 'certified,' even with a

disclaimer elsewhere in an advertisement, means that the cars are safe and that recalls have been

addressed[,]" and that "[t]his is because the certification process removes one of the major

drawbacks to buying a used car: uncertainty about the mechanical condition of the vehicle."   *Id.*

at 1–2.

52.     The National Automobile Dealers Association ("NADA") also commented on the

agency's proposals. NADA Comments (Feb. 29, 2016).   NADA, which represents over 16,000

franchised dealers in all 50 states who sell used cars and trucks, assured the agency that "with

regard to the proposed consent order's prospective disclosure requirements . . . NADA *will*

*disseminate compliance guidance to its members concerning these requirements and encourage*

*their adoption." Id.* (emphasis added).

53.     Despite major opposition from consumer organizations and members of Congress,

on December 8, 2016, the FTC issued three final "Decisions and Orders" allowing General

Motors, Jim Koons Management Co., and Lithia Motors, Inc. to continue to advertise and market

"certified" used vehicles subject to pending safety recalls as "safe," "repaired for safety," and

"subject to rigorous inspection" as long as the dealers included a disclosure that such cars "may"

be subject to recalls for safety issues that have not been repaired.

54.     Meanwhile, in September 2015, AutoNation Inc., the nation's largest retail dealer

of new cars, which also sells used vehicles, announced that it had adopted a policy of not selling

any used vehicle that was subject to a safety recall until the repairs were made.   However, in

November 2016, after the FTC announced its proposed decisions to allow GM, Jim Koons

Management, and Lithia Motors, to sell "certified" used cars subject to pending safety recalls as

"safe," "repaired for safety," and "subject to a rigorous inspection," without repairing those

vehicles and with the disclosure that such vehicles "may" be subject to recalls, AutoNation

reversed its position.

    c)  *The FTC's proposes similar settlements with three other major used car*
        *dealers.*

   55.  On December 22, 2016, the FTC published in the Federal Register notice that it

intended to settle similar Complaints against three other major used car dealers—West-Herr

Automotive Group Inc., CarMax, Inc., and Asbury Autmotive Group, Inc.—allowing and

allowing interested persons 30 days to comment on those proposals.   81 Fed. Reg. 93,926–33

(Dec. 22, 2016).   Like the settlements entered into with GM, Jim Koons Management, and

Lithia Motors, those additional proposed settlements would also allow the dealers to sell

"certified" used vehicles as "safe," "repaired for safety," and "subject to rigorous inspection"

when such vehicles are subject to pending safety recalls, as long as the dealers disclose to

consumers that the vehicles "may" be subject to such recalls.

   56.  Under the heading "Statement of the Federal Trade Commission Concerning Auto

Recall Advertising Cases," the Commission stated that "[u]nrepaired auto recalls pose a serious

threat to public safety[,]" that "[c]ar manufacturers and the National Highway Safety

Administration have recalled tens of millions of vehicles in each of the last several years for

defects that pose significant safety risks to consumers[,]" and that "defects that have been the

subject of recalls have led to severe injuries and even death for many consumers."   81 Fed. Reg.

at 93930. The Commission further explained that "Section 5 of the Federal Trade Commission Act . . . *enables the Commission to stop car sellers from engaging in false or misleading advertising practices that mask the existence of open recalls, and we are committed to doing just that.*" *Id.* (emphasis added). It further explained that "as part of this effort, the Commission is issuing final orders against General Motors Company, Jim Koons Management Company, and Lithia Motors, Inc. and announcing proposed orders against CarMax, Inc., West-Herr Automotive Group, Inc., and Asbury Automotive Group, Inc." *Id.* (emphasis added).

57. Plaintiffs all commented on the proposed settlements concerning West-Herr Automotive Group Inc., CarMax, Inc., and Asbury Autmotive Group, Inc., and opposed those settlements on the same grounds that they opposed the settlements with GM, Jim Koons Management, and Lithia Motors. The FTC has not yet issued final Decisions and Orders regarding the more recent proposed settlements.

> d) *Additional facts giving rise to Plaintiffs' claims*

58. It is extremely easy for used vehicle dealers to check the safety recall status of used vehicles online, by checking the manufacturer's website, calling the manufacturer's toll-free number, or contacting a local dealer and providing the Vehicle Identification Number for a particular vehicle.

59. It is far easier for the dealer to ascertain whether a particular vehicle is subject to a safety recall than it is for many prospective buyers of used cars, especially those who do not have access to the internet, are poorly educated, are young and inexperienced at obtaining such information, or simply do not have the wherewithal to ascertain such information.

60. Unlike many other consumer products, operating a motor vehicle involves risks to the broader public, including pedestrians, bicyclists, passengers, and everyone who uses the

roads and highways.   There have been numerous recalls involving safety defects where others'

lives are placed at risk, including, but not limited to faulty brakes, loss of steering, axles that

break, wheels that fall off, transmissions that slip out of park so cars slide downhill, hoods that

fly up and obscure vision, windshield wipers that fail and cause a loss of visibility, ignition

switches that cause a loss of power steering and brakes, sticking accelerator pedals, failures to

protect against cyber-attacks/computer hacking and remote control of electronic systems that

control steering and braking, drive shafts that separate from the axles, catching on fire, and fuel

leaks that cause carbon monoxide poisoning.

61.    For people in the market for a used car, the "certified pre-owned" designation has

become the gold standard—an indication that a qualified mechanic has vouched for the car and

that a buyer can expect a vehicle that is almost as good as new.   R. Lieber, *How to Buy a Used

Car in an Age of Widespread Recalls*, N.Y. TIMES, Jan. 27, 2017 at B1.

62.    The FTC has recognized that "written disclosures or fine print may be insufficient

to correct a misleading representation[,]" and that "[p]ro forma statements or disclaimers may

not cure otherwise deceptive messages or practices."   FTC Policy Statement on Deception

(October 14, 1983).

## PLAINTIFFS' CLAIMS FOR RELIEF

63.    Defendant FTC's final Decisions and Orders concerning General Motors, Jim

Koons Management Company, and Lithia Motors are interpretative rules and general statements

of policy within the meaning of the FTC Act, 15 U.S.C. §57a(a)(1)(A), and the Administrative

Procedure Act, 5 U.S.C. § 551(4), and therefore subject to review under Section 706(2) of the

APA. They embody the agency's interpretation of what is a "deceptive act or practice" within the

meaning of Section 5 of the FTC Act with regard to dealers who advertise and market "Certified

Pre-Owned" vehicles. Alternatively, these Decisions and Orders are "orders" within the meaning of the APA, 5 U.S.C. §551(5).

64.     Defendant FTC's Decisions and Orders allowing dealers of "certified" used vehicles to advertise and market those vehicles as "safe," "repaired for safety," and "subject to rigorous inspection" when such vehicles are *not* safe and are subject to pending safety recalls, is inconsistent with the agency's Used Car Trade Regulation Rule, which provides that it is "a deceptive act or practice for any used vehicle dealer, when the dealer sells or offers for sale a used vehicle in or affecting commerce . . . [t]o misrepresent the mechanical condition of a used vehicle," 16 C.F.R. § 455.1(a)(1), and is therefore "not in accordance with law" within the meaning of the APA, 5 U.S.C. § 706(2)(A).   In light of the record that was before the agency when it issued these final Decisions and Orders, the agency's actions are also arbitrary and capricious and an abuse of discretion in violation of the APA, 5 U.S.C. § 706(2).

65.     Defendant FTC's Decisions and Orders allowing dealers of "certified" used vehicles to advertise and market those vehicles as "safe," "repaired for safety," and "subject to rigorous inspection" when such vehicles are subject to pending safety recalls, as long as the dealer discloses to the consumer that the vehicle "may" be subject to a recall, is also inconsistent with the agency's Used Car Trade Regulation Rule, which provides that it is "a deceptive act or practice for any used vehicle dealer, when the dealer sells or offers for sale a used vehicle in or affecting commerce . . . [t]o misrepresent the mechanical condition of a used vehicle," 16 C.F.R. § 455.1(a)(1), and is therefore "not in accordance with law" within the meaning of the APA, 5 U.S.C. § 706(2)(A).   In light of the fact that the Commission's own administrative complaints stated that it was a deceptive practice under Section 5 of the FTC Act for used car dealers to fail to disclose that vehicles subject to recalls "are" subject to such recalls, and the record that was

before the agency when it issued these final Decisions and Orders, the agency's actions are also arbitrary and capricious and an abuse of discretion in violation of the APA, 5 U.S.C. § 706(2)(A).

66.     Defendant's Decisions and Orders also violate Section 5 of the FTC Act, 15 U.S.C. § 45(a)(2), which "directs" the agency "to prevent" unfair and deceptive practices, and thus are not in accordance with law, and are arbitrary and capricious, and an abuse of discretion in violation of the APA, 5 U.S.C. § 706(2)(A).

67.     Defendant's unlawful actions injure Plaintiffs as described in ¶¶ 4–14.

**WHEREFORE**, Plaintiffs request that the Court issue an order:

(1)     declaring that the FTC's Decisions and Orders violate the agency's Used Car Trade Regulation Rule, 16 C.F.R. § 455.1(a)(1), Section 5 of the FTC Act, 16 U.S.C. § 45(a), and the APA;

(2)     setting aside the FTC's Decisions and Orders;

(3)     awarding Plaintiffs their costs and attorneys' fees; and

(4)     awarding Plaintiffs any other relief that the Court may deem just and proper.

Respectfully submitted,

___/s/_____

Katherine A. Meyer

D.C. Bar No. 244301

Meyer Glitzenstein & Eubanks

4115 Wisconsin Ave., N.W. Suite 210

Washington, D.C.   20016

(202) 588-5206

(202) 588-5049 (fax)

Kmeyer@meyerglitz.com

Attorney for Plaintiffs

Date:   March 24, 2017