**PLAINTIFFS' EXHIBIT U**

OPPOSITION TO MOTION TO DISMISS

CIV. NO. 17-00540 (KBJ)

UNITED STATES DISTRICTCOURT
FOR THE DISTRICT OF COLUMBIA

CONSUMERS FOR AUTO RELIABILITY )
AND SAFETY, et al., )
)
)
)
Plaintiffs )
) No. 17-00540 (KBJ)
v. )
)
FEDERAL TRADE COMMISSION, )
)
)
Defendant. )

## DECLARATION OF ROSEMARY SHAHAN

1. I am the President of Consumers for Auto Reliability and Safety ("CARS"), one of the Plaintiffs in this case. CARS is a national, award-winning non-profit auto safety and consumer advocacy organization, working to save lives, prevent injuries, and protect consumers from auto-related fraud and abuse. CARS petitioned Respondent Federal Trade Commission ("FTC") to take action to prevent CarMax from advertising and marketing used vehicles as having "passed a rigorous 125+ point inspection" and qualifying to be sold as "CarMax Quality Certified" when those vehicles are subject to pending safety recalls. CARS also commented on the proposed decisions that led to the final Decisions and Order at issue in this case.

2. CARS brings this case on behalf of its Officers and Board Members who, with their families, are exposed to the increased risk of injury and death, as well as property damage, as a result of the FTC's Decisions and Orders that allow dealers of "certified" used cars to continue to advertise and sell those cars as "safe," "repaired for safety," and "subject to rigorous inspection" when such vehicles are *not* safe because they contain defects that are the subject of pending safety recalls.

3. As a result of the six FTC Decisions and Orders at issue in this case, car dealers who previously did not sell such vehicles without repairing them prior to sale are now choosing instead to conform their marketing and sales practices to those sanctioned by the FTC in the Decisions and Orders at issue in this case, and hence are now advertising and selling "certified" used cars as "safe," "repaired for safety," and "subject to rigorous inspection" when such vehicles are *not* safe because they are subject to pending safety recalls, and without repairing them prior to sale.

4. Dealers are doing so because if they instead repair all such vehicles prior to sale they incur additional costs that are not being borne by their competitors as a result of the challenged FTC actions, and either pay those costs or pass them on to their customers, which places those dealers at a distinct economic disadvantage vis-à-vis their competitors who can sell comparable vehicles for less.

5. For example, in September 2015, AutoNation Inc., the nation's largest new car dealership chain, which owns over 290 dealerships in 15 states which sell "certified" used vehicles, including 16 stores in California, announced that it had adopted a policy of *not* selling any used vehicle that was subject to a safety recall until the repairs were made.  However, in November 2016, AutoNation reversed its position. As reported by the *New York Times*: "[b]y last year, [AutoNation's practice] was costing the company dearly, to the tune of 6 cents per share of its earnings in the third quarter. In November, it gave up and began selling some cars with open recalls (and full disclosures). The lack of Takata airbag replacements, *the F.T.C.'s decision* and other anticipated regulatory rollbacks proved to be too much. 'We are proud of the efforts we made, but sometimes the system beats you down,' Marc Cannon, the company's chief marketing officer, said." *See New York Times* (Jan. 27, 2017) (Plaintiffs' Exhibit O).

As the *New York Times* also reported, before the FTC's Decisions and Orders concerning General Motors, Lithia Motors, and Koons Management were finalized, "every major car company had said that they forbade their dealers from selling certified used vehicles with any open recalls, including

ones for Takata airbags. But afterward, Ford broke ranks, issuing an update to dealers on its "enhanced" recall process and giving them permission to certify used vehicles that had open recalls after all." *Id.* Ford has 3,238 dealerships in the United States, and is the largest retailer of vehicles in California. *See* http://corporate.ford.com/microsites/sustainability-report-2015-16/people-dealers.html.

6. The National Automobile Dealers Association ("NADA"), which represents over 16,000 franchised dealers in all 50 states who sell used cars and trucks, informed the FTC with respect to the agency's proposals to allow used car dealers to sell "certified" used cars as "safe," "repaired for safety," and "subject to rigorous inspection" that "NADA *will disseminate compliance guidance to its members concerning these requirements and encourage their adoption.*" *Id.* (emphasis added). NADA Comments (Feb. 29, 2016) (Plaintiffs' Exhibit I).

7. As a result of thousands of car dealers conforming their conduct to what is permitted by the Decisions and Orders at issue in this case, CARS Officers and Board Members and their family members are exposed to an increased risk of injury, death, and property damage caused by more unsafe used vehicles with unrepaired safety defects—such as faulty brakes, steering loss, wheels that fall off, and catching on fire—being on the nation's roads and highways each day, and from being at increased risk of riding as passengers in more used cars that are unsafe. These injuries are present, imminent, and continuing, as millions of used cars subject to safety recalls are sold each year in this country.

8. These risks are by no means speculative. There are currently tens of millions of used cars presently on the used car market that are subject to open safety recalls, including the Takata air bag recall, for which repair parts are not even presently available for all of the millions of cars that are covered by that recall. *See* Declaration of Michael Brooks ¶ 11 (Plaintiffs' Exhibit V). Indeed, because the Takata parts are not even available, consumers who buy used cars subject to that particular recall will not able to get their car repaired in the near future. *Id.* In addition, based on a recent survey of nearly 1,700 vehicles CarMax offered for sale in Massachusetts, Connecticut, and California, since 2015, CarMax has more than doubled its sales of unrepaired recalled vehicles, including vehicles where

the manufacturer indicates that no remedy is yet available. One vehicle CarMax offered for sale had six unrepaired safety defects subject to recall. *See* Pl. Ex. X.

9. While our officers and Board members themselves may know enough not to purchase such cars, CARS cannot insure that all of their family members are so informed or will always heed such information. Nor can CARS ensure that the larger used car buying public knows to avoid buying a "certified" used car that is subject to a pending safety recall, or will be able to get recalled cars repaired before a crash occurs, particularly when auto dealers and politicians sometimes downplay the risks posed by recalled cars, and there are widespread shortages of repair parts for remedying safety recalls. Accordingly, CARS and its Officers and Board members and their family members cannot avoid being exposed to the increased risks of those vehicles being on the road as result of the FTC's actions in authorizing such practices for the next twenty years.

10. The injuries described herein are directly caused by the FTC's Decisions and Orders at issue in this case, which instruct the entire auto industry that the FTC does not consider it a "deceptive or unfair act or practice" for dealers to advertise and sell "certified" used cars subject to safety recalls as "certified," "safe," "repaired for safety," and "subject to rigorous inspection," as long as the dealers disclose to consumers that such vehicles "may" be subject to a safety recall. As demonstrated above, and based on my knowledge of this industry, car dealers who previously would not sell a "certified" used car that was subject to a pending safety recall are now doing so to avoid being placed at a competitive disadvantage vis-a-vis competing car dealers who have been given permission by the FTC to engage in such practices, and to take advantage of the FTC's dangerously lax policy for the next 20 years—the duration of the challenged Decisions and Orders. As the *New York Times* reported, through the challenged Decisions and Orders "the Federal Trade Commission made it easier for cars to be billed as 'certified,' even if they were under recall and hadn't been fixed yet." Plaintiffs' Exhibit O.

11. These injuries will be at least partially redressed if Plaintiffs prevail in this case because the agency's policy announced in the challenged Decisions and Orders will be set aside and, as a result, fewer car dealers will continue to sell unsafe "certified" used vehicles. Rather, those dealers who used to repair such cars prior to sale, but who changed their practices in response to the FTC Decisions and Orders at issue, would revert to their prior practices of repairing such cars before offering them for sale to consumers.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge.

_Rosemary Shahan_
Rosemary Shahan

Date:   October 5, 2017