**PLAINTIFFS' EXHIBIT W**

OPPOSITION TO MOTION TO DISMISS

CIV. NO. 17-00540 (KBJ)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CONSUMERS FOR AUTO RELIABILITY AND SAFETY, et al., <br><br> Plaintiffs <br><br> v. <br><br> FEDERAL TRADE COMMISSION, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) |

No. 17-00540 (KBJ)

## DECLARATION OF EDMUND MIERZWINSKI

1. I am the Consumer Program Director for the United States Public Interest Research Group, Inc. ("U.S. PIRG"), one of the plaintiffs in this case. U.S. PIRG is a non-profit membership organization whose mission is to stand up to powerful interests when they threaten the public's health and safety, financial security, or right to fully participate in our democratic society. U.S. PIRG petitioned Defendant Federal Trade Commission ("FTC") to take action to prevent CarMax from advertising and marketing used vehicles as having "passed a rigorous 125+ point inspection" and qualifying to be sold as "CarMax Quality Certified" when those vehicles are subject to pending safety recalls. U.S. PIRG and some of its state affiliates commented on the proposed decisions that led to the final decisions and orders at issue in this case.

2. U.S. PIRG brings this case on behalf of its tens of thousands of members nationwide who, as a result of the FTC's decisions and orders at issue, are exposed to the increased risk of injury and death, as well as property damage because the FTC's decisions and

orders allow dealers of "certified" used cars to advertise and sell those cars as "safe," "repaired for safety," and "subject to rigorous inspection" when such vehicles are *not* safe because they contain defects and other problems that are the subject of pending safety recalls. As the federation of state PIRGs, U.S. PIRG also brings this case for the benefit of its state-based affiliates, in particular Massachusetts Public Interest Research Group, Inc. ("MASSPIRG"), Connecticut Public Interest Research Group Citizen Lobby, Inc. ("ConnPIRG"), and California Public Interest Research Group, Inc. ("CALPIRG").

3. As a result of the FTC's decisions and orders, U.S. PIRG's members will purchase used cars believing them to be safe when in fact they are not safe because they are subject to pending safety recalls. Those members are at increased risk of suffering injury, death, property damage, and increased financial burdens when they purchase used vehicles with safety defects that have not been repaired and those defects cause crashes, fires, or other harmful events. U.S. PIRG's members are also exposed to economic and other injuries as a result because they will have to incur the costs associated with having those vehicles repaired, which can also include having to take time off from work and the loss of transportation for work and personal use, requiring those members to pay for alternative means of transportation until their vehicles are repaired. These injuries are present, continuing, and imminent, as U.S. PIRG's members buy used cars on a regular basis.

4. U.S. PIRG's members are also at increased risk of personal injury, death, property damage, and attendant financial burdens from being exposed to crashes, fires, or other harmful events caused by other defective used cars that, but for the decisions and orders at issue in this case, would not be on the roads and highways, and from being passengers in more used cars that are unsafe.

5. U.S. PIRG's members are also adversely impacted by the FTC's decisions and orders that put the onus on consumers to ascertain whether a particular used car is subject to an unrepaired recall, rather than that obligation being imposed on the dealer. Indeed, the FTC's Used Motor Vehicle Trade Regulation Rule specifically prohibits dealers from misrepresenting "the mechanical condition" of any used car offered for sale. 16 C.F.R. § 455.1(a)(1). Therefore, prior to the issuance of the challenged decisions and orders, the onus was on the dealer to ascertain and disclose whether a particular car was subject to an unrepaired recall because dealers could not represent that a car was "safe" if, in fact, it was not safe because it contained a defect or other mechanical problem that was subject to a recall and, hence, rendered the car unsafe to drive. By allowing dealers to advertise and offer for sale a "safe" used car that is in fact not safe, as long as the dealer discloses to the consumer that the car "may" be subject to a recall, the agency has shifted the burden to ascertain such information to the consumer, including U.S. PIRG's members and their families. The decisions and orders also shift the economic burden to consumers to get the car fixed, whereas, pursuant to the Used Car Rule, the dealer would not be allowed to market a car as "safe" when, in fact, it was not in safe mechanical condition.

6. Car dealers who previously would not sell such vehicles without repairing them prior to sale are now choosing instead to conform their marketing and sales practices to those sanctioned by the FTC in the decisions and orders at issue in this case and, hence, are now selling "certified" used cars as "safe," "repaired for safety," and "subject to rigorous inspection" when such vehicles are *not* safe because they are subject to safety recalls and without repairing them prior to sale.

7. Dealers do so because, if they instead repair all such vehicles prior to sale, they will incur additional costs that are not being borne by their competitors as a result of the

3

challenged FTC actions and either have to pay those costs or pass them on to their customers, which places these dealers at a distinct economic disadvantage vis-à-vis their competitors who will be able to sell their used vehicles for less.

8. For example, in September 2015, AutoNation Inc., the nation's largest new car dealership chain, which owns over 290 dealerships in 15 states that sell "certified" used vehicles, including 16 stores in California, announced that it had adopted a policy of *not* selling any used vehicle that was subject to a safety recall until the repairs were made. However, in November 2016, AutoNation reversed its position. As reported by the *New York Times*: "By last year, [AutoNation's practice] was costing the company dearly, to the tune of 6 cents per share of its earnings in the third quarter. In November, it gave up and began selling some cars with unrepaired recalls (and full disclosures). The lack of Takata airbag replacements, *the F.T.C.'s decision* and other anticipated regulatory rollbacks proved to be too much. 'We are proud of the efforts we made, but sometimes the system beats you down,' Marc Cannon, the company's chief marketing officer, said." *See New York Times* (Jan. 27, 2017) (Plaintiffs' Exhibit O). As the *New York Times* also reported, before the FTC's decisions and orders concerning General Motors, Lithia Motors, and Koons Management were finalized, "every major car company had said that they forbade their dealers from selling certified used vehicles with any open recalls, including ones for Takata airbags. But afterward, Ford broke ranks, issuing an update to dealers on its 'enhanced' recall process and giving them permission to certify used vehicles that had open recalls after all." *Id*. Ford has 3,238 dealerships in the United States and is one of the largest retailer of vehicles in California. *See* http://corporate.ford.com/microsites/sustainability-report-2015-16/people-dealers.html. In addition, based on a recent survey of nearly 1,700 vehicles CarMax offered for sale in Massachusetts, Connecticut, and California, CarMax has

more than doubled its sales of unrepaired recalled vehicles since 2015, including vehicles where the manufacturer indicates that no remedy is yet available. One vehicle CarMax offered for sale had six unrepaired safety defects subject to recall. *See* G. Weissman et al., *Used Car Roulette* (September 2017) (Pl. Ex. X).

9. The National Automobile Dealers Association ("NADA"), which represents over 16,000 franchised dealers in all 50 states who sell used cars and trucks, informed the FTC with respect to the agency's proposals to allow car dealers to sell "certified" used cars as "safe," "repaired for safety," and "subject to rigorous inspection" that "NADA *will disseminate compliance guidance to its members concerning these requirements and encourage their adoption*." *Id*. (emphasis added). NADA Comments (Feb. 29, 2016) (Plaintiffs' Exhibit I).

10. As a result of used car dealers conforming their conduct to what is permitted by the decisions and orders at issue in this case, U.S. PIRG's members and their families are exposed to an increased risk of injury, death, and property damage caused by more unsafe used vehicles with unrepaired safety defects being on the nation's roads and highways each day. These injuries are present, imminent, and continuing, as millions of used cars subject to safety recalls are sold each year in this country.

11. These risks are by no means speculative. Currently, there are tens of millions of used cars on the used car market that are subject to unrepaired recalls. *See* Declaration of Michael Brooks (Plaintiffs' Exhibit V) ¶ 11.

12. While some of our members may know enough not to purchase such used cars, U.S. PIRG cannot ensure that all of its members and their family members are so informed or will always heed such information. Nor can U.S. PIRG or its state-based affiliates insure that the larger used car buying public knows to avoid buying a "certified" used car that is subject to a

pending safety recall. Accordingly, U.S. PIRG's members and their family members cannot avoid being exposed to the increased risks of those vehicles being on the road as result of the FTC's actions in authorizing such practices.

13. All of these injuries are directly caused by the FTC's decisions and orders at issue in this case, which instruct the entire auto industry that the FTC does not consider it a "deceptive act or practice" for dealers to sell used cars subject to safety recalls as "certified," "safe," "repaired for safety," and "subject to rigorous inspection," as long as the dealers disclose to consumers that such vehicles "may" be subject to a safety recall.

14. As demonstrated above, and based on U.S. PIRG's experience with this industry, used car dealers who previously would not sell a "certified" used car that was subject to a pending safety recall as "safe," "repaired for safety," or "subject to a rigorous inspection" are now doing so to avoid being placed at a competitive disadvantage vis-à-vis the other used car dealers who have been given permission by the FTC to engage in such practices.

15. These injuries will be at least partially redressed if Plaintiffs prevail in this case because the FTC's decisions and orders will be set aside and fewer car dealers will continue to sell unsafe vehicles. Rather, car dealers will be required to comply with the Used Car Rule, which prohibits them from misrepresenting the mechanical condition of the vehicles they offer for sale. In addition, those dealers who used to repair cars subject to recalls prior to sale, but who changed their practices in response to the FTC's decisions and orders at issue, will most likely revert to their prior practices of repairing such cars before offering them for sale to consumers in order to obtain a competitive advantage over dealers who do not do so.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true

and accurate to the best of my knowledge.

_____
Edmund Mierzwinski

Date: October 4, 2017