# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CONSUMERS FOR AUTO RELIABILITY AND SAFETY, *et al.*,<br><br>                Plaintiffs,<br><br>v.<br><br>FEDERAL TRADE COMMISSION,<br><br>                Defendant. | No. 1:17-cv-00540-KBJ |

## REPLY MEMORANDUM IN SUPPORT OF
## FEDERAL TRADE COMMISSION'S MOTION TO DISMISS

DAVID C. SHONKA
Acting General Counsel

JOEL MARCUS
Deputy General Counsel for Litigation

LESLIE RICE MELMAN
Assistant General Counsel for Litigation
D.C. Bar No. 266783

BRADLEY DAX GROSSMAN
Attorney
Mass. Bar No. 669358

FEDERAL TRADE COMMISSION
600 Pennsylvania Ave., N.W.
Washington, D.C. 20580
Tel: (202) 326-2478 (Melman)
     (202) 326-2994 (Grossman)
Fax: (202) 326-2477
lmelman@ftc.gov
bgrossman@ftc.gov

Attorneys for Defendant Federal Trade Commission

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 2

    A.   Congress Restricted Judicial Review Of FTC Adjudicative Orders To Cases Brought In The Courts Of Appeals By Parties Subject To The Orders ........................................... 2

    B.   Relabeling FTC Adjudicative Orders "Policy Statements" Or "Interpretive Rules" Does Not Make Them Reviewable At The Request Of Non-Parties In District Court ............ 4

    C.   Plaintiffs Lack Article III Standing ................................................................................ 7

    D.   The Consent Decrees Are Not Subject To Review Because They Are The Product Of The FTC's Prosecutorial Discretion ............................................................................. 12

CONCLUSION ..................................................................................................................... 15

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

(*Authorities principally relied upon are marked with an asterisk.)

**CASES**

*AFGE, AFL-CIO v. Vilsack*, 118 F. Supp. 3d 292 (D.D.C. 2015), *aff'd*, 672 F. App'x 36 (D.C. Cir. 2016) .................................................................................................................... 7, 10

*Animal Legal Def. Fund v. Glickman*, 154 F.3d 426 (D.C. Cir. 1998) .......................................... 10

*\*Ass'n of Irritated Residents v. EPA*, 494 F.3d 1027 (D.C. Cir. 2007) ................................. 12, 14

*Conference Group, LLC v. FCC*, 720 F.3d 957 (D.C. Cir. 2013) .................................................. 4

*\*Consumer Fed'n of Am. v. FTC*, 515 F.2d 367 (D.C. Cir. 1975) ............................................ 1, 2

*Consumers for Auto Reliability & Safety v. FTC*, No. 17-1038, 2017 U.S. App. LEXIS 12921 (D.C. Cir. Jul. 14, 2017) ............................................................................................ 2, 4

*\*Crowley Caribbean Transport, Inc. v. Peña*, 37 F.3d 671 (D.C. Cir. 1994) .......................... 6, 13

*Elec. Privacy Info. Ctr. v. FTC*, 844 F. Supp. 2d 98, 106 (D.D.C. 2012), *aff'd*, No. 12-5054, 2012 WL 1155661 (D.C. Cir. Mar. 5, 2012) ................................................................. 14

*Exec. Bus. Media, Inc. v. Dep't of Def.*, 3 F.3d 759 (4th Cir. 1993) ............................................ 14

*\*Heckler v. Chaney*, 470 U.S. 821 (1985) ............................................................................ 2, 12, 14

*\*ICC v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270 (1987) ..................................................... 5, 13

*International Union v. Brock*, 783 F.2d 237 (D.C. Cir. 1986) ........................................................ 5

*Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501 (1986) ..................... 6

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ................................................................... 10, 11

*Microwave Acquisition Corp. v. FCC*, 145 F.3d 1410 (D.C. Cir. 1998) ........................................ 8

*Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930 (D.C. Cir. 2004) ..................... 10

*POM Wonderful, LLC v. FTC*, 777 F.3d 478 (D.C. Cir. 2015) ...................................................... 4

*\*Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279 (D.C. Cir. 2007)... 7, 8

*\*Renal Physicians Ass'n v. HHS*, 489 F.3d 1267 (D.C. Cir. 2007) ....................................... 10, 12

*Safe Energy Coalition of Michigan v. NRC*, 866 F.2d 1473 (D.C. Cir. 1989) ........................... 5, 6

*Scanwell Labs., Inc. v. Shaffer*, 424 F.2d 859 (D.C. Cir. 1970) .................................................. 14

*Schering Corp. v. Heckler*, 779 F.2d 683 (D.C. Cir. 1985) ........................................................... 12

*\*Telecomm. Research & Action Ctr. v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ............................. 1, 3

*\*Ukiah Adventist Hosp. v. FTC*, 981 F.2d 543 (D.C. Cir. 1992) ................................................. 1, 3

*United States v. Carpenter*, 526 F.32d 1237 (9th Cir. 2008) ....................................................... 14

**STATUTES**

5 U.S.C. § 701(a)(2) .................................................................................................................. 2, 12

*15 U.S.C. § 45(b) .................................................................................................................... 4, 13

*15 U.S.C. § 45(c) ..................................................................................................................... 2, 5

15 U.S.C. § 45(c)-(d) ...................................................................................................................... 1

15 U.S.C. § 45(d) ............................................................................................................................ 2

15 U.S.C. § 45(f)-(g) ....................................................................................................................... 4

**OTHER AUTHORITIES**

Statement of the Federal Trade Commission Concerning Auto Recall Advertising Cases, 81 Fed.
    Reg. 93,926 (Dec. 22, 2016) ................................................................................................ 8, 10

**INTRODUCTION**

We showed in our motion that Congress limited judicial review of FTC adjudicatory orders to challenges brought in the courts of appeals by persons subject to those orders. 15 U.S.C. § 45(c)-(d). The D.C. Circuit has firmly established that Congress gave nonparties like plaintiffs no right to review of FTC orders and cut off jurisdiction in district courts. *Ukiah Adventist Hosp. v. FTC*, 981 F.2d 543, 549 (D.C. Cir. 1992); *Telecomm. Research & Action Ctr. v. FCC*, 750 F.2d 70, 77 (D.C. Cir. 1984) (*TRAC*); *Consumer Fed'n of Am. v. FTC*, 515 F.2d 367, 369-73 (D.C. Cir. 1975).

Plaintiffs fail even to acknowledge that binding law. Instead, they ignore and try to sidestep it by arguing that they are challenging not the orders *themselves*, but only their *reasoning*. That logic makes little sense on its face. It also would allow nonparties to challenge virtually any FTC order, undoing the limits that Congress placed on judicial review of FTC adjudications. The upshot would be dueling judicial proceedings as parties go to the courts of appeals and non-parties to the district courts.

We also showed that plaintiffs lack Article III standing, and nothing in their opposition proves otherwise. Plaintiffs' dual assertions that the consent decrees will lead car dealers to put more unsafe vehicles on the roads and that invalidating the decrees will cause dealers to reverse that practice are nothing more than speculation about the actions of third parties not before the Court. Indeed, plaintiffs' own evidence undermines their predictions about those parties' behavior. Plaintiffs have thus failed to show any imminent and non-speculative injury that is traceable to the FTC's conduct and would be redressed by a ruling in their favor.

Finally, we showed that the FTC's decisions to settle administrative enforcement actions are committed to the agency's discretion by law and are therefore unreviewable under 5 U.S.C.

§ 701(a)(2) and the principle of *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). Because the FTC Act gives the Commission broad authority to bring (and settle) enforcement actions in the public interest, plaintiffs have not shown that there is a meaningful standard against which to judge the agency's exercise of discretion.

**ARGUMENT**

**A. Congress Restricted Judicial Review Of FTC Adjudicative Orders To Cases Brought In The Courts Of Appeals By Parties Subject To The Orders**

Congress did not grant members of the general public a right to seek review of FTC adjudicative orders. Instead, Section 5(c) of the FTC Act allows "[a]ny person, partnership, or corporation required by an order of the Commission to cease and desist from using any . . . act or practice [to] obtain a review of such order in [a] court of appeals of the United States." 15 U.S.C. § 45(c). Congress provided no other means for review, thus excluding those not subject to a cease-and-desist order from seeking review. *See Consumers for Auto Reliability & Safety v. FTC*, No. 17-1038, 2017 U.S. App. LEXIS 12921, at *1 (D.C. Cir. Jul. 14, 2017) (*CARS*) (dismissing plaintiffs' petition for review because they "are not subject to the requirements of the consent orders at issue and therefore may not challenge those orders in this court"). Because "Section 5(c) . . . only allows judicial review for parties subject to an FTC cease and desist order," non-parties such as plaintiffs here "are not entitled to review under the APA." *Consumer Fed'n*, 515 F.2d at 369. Congress "did not intend to permit" nonparty organizations "who suffer only remote and intangible injury, to obtain judicial review of FTC orders." *Id.* at 373; *see* FTC Mot. 7.

Moreover, any challenges to FTC orders must be brought "in the courts of appeals of the United States," 15 U.S.C. § 45(c), whose jurisdiction over the case is "exclusive," 15 U.S.C. § 45(d). It is established circuit law that where, as here, Congress "vests jurisdiction in a

particular court," it "cuts off original jurisdiction in other courts in all cases covered by that statute." *TRAC*, 750 F.2d at 77.  Congress thus "manifested an intent that the appellate court exercise sole jurisdiction over the class of claims covered by the statutory grant of review power." *Id.*  Under *TRAC*, "review of FTC cease and desist orders is committed to the courts of appeals." *Ukiah*, 981 F.2d at 549; *see* FTC Mot. 6.

Plaintiffs totally ignore *Consumer Federation*, *TRAC*, *Ukiah*, and the FTC Act; they neither cite nor attempt to distinguish any of those controlling authorities.  That failure alone should be fatal to their case.  Instead of contending with the governing law, plaintiffs try to sidestep it by arguing that interested third parties can challenge any agency decision "regardless of the form in which [it is] embodied," so long as it reflects the agency's position on a point of policy or statutory interpretation.  Opp. 28.  But that approach cannot possibly be correct because it would nullify Congress's deliberate decision to restrict review of FTC adjudicatory orders.

It also would invite chaos.  Under plaintiffs' approach, the subjects of an FTC order may seek review only in the courts of appeals (*see* Opp. 18) while any unsatisfied third party could sue the FTC in any district court in the country.  Each FTC order could thus spark a flurry of duplicative litigation and result in inconsistent decisions across multiple district and appellate courts.  Congress obviously did not intend such a disorderly, inconsistent, and wasteful process of judicial review.  As *TRAC* explained, Congress opted for exclusive jurisdiction because it "eliminates duplicative and potentially conflicting review . . . and the delay and expense incidental thereto."  750 F.2d at 78 (citation omitted).  Moreover, plaintiffs' approach would upend Congress's desire to give the subjects of FTC administrative adjudications the certainty needed to negotiate settlements with the government.  Settlement would be untenable if strangers could later undo carefully structured compromises.

### B. Relabeling FTC Adjudicative Orders "Policy Statements" Or "Interpretive Rules" Does Not Make Them Reviewable At The Request Of Non-Parties In District Court

Faced with Congress's plain refusal to permit nonparties to challenge FTC adjudicative orders, plaintiffs assert that they are not contesting orders at all, but rather interpretive rules or policy statements. Opp. 25-28. Plaintiffs thus disclaim any interest in "challenging FTC decisions *not* to prosecute the used car dealers for engaging in deceptive acts and practices." *Id.* at 18. That concession should end the case: FTC decisions to settle administrative prosecution are *exactly* what plaintiffs challenge. Their complaint asks the Court to "declar[e] that the FTC's *Decisions and Orders* violate the [law]" and to "set[] aside the FTC's *Decisions and Orders*." Am. Compl. (ECF No. 7) at 26 (emphasis added). Those decisions and orders were the product of the Commission's adjudicative authority and process under Sections 5(b), (f), and (g) of the FTC Act, 15 U.S.C. § 45(b), (f)-(g). Thus, by plaintiffs' own admission, they are challenging FTC orders, not policy statements or interpretive rules.

Plaintiffs are wrong that an unreviewable order becomes a reviewable rule or policy statement simply because it may inspire others in the same industry to modify their behavior. That could be said for virtually any adjudicative order throughout the government. The D.C. Circuit has recognized that the FTC "is not precluded from announcing new principles in an adjudicative proceeding, and that the choice between rulemaking and adjudication lies in the first instance within the agency's discretion." *POM Wonderful, LLC v. FTC*, 777 F.3d 478, 497 (D.C. Cir. 2015) (citation and quotation marks omitted).[1] Here, the consent decrees were "neither a legislative nor an interpretive rule," but were simply directives "given in the course of an . . . adjudication." *Conference Group, LLC v. FCC*, 720 F.3d 957, 965 (D.C. Cir. 2013). As

---

[1] Indeed, the D.C. Circuit cited this passage from *POM* when it dismissed plaintiffs' petition for review and concluded that the consent decrees should not "be treated as a rule or a substantive amendment to a rule." *CARS*, 2017 U.S. App. LEXIS 12921, at *1-2.

discussed above, the FTC Act provides that nonparties—such as plaintiffs here—may not challenge adjudicative orders. Merely relabeling them does not change the governing law. Every adjudicative order could be reframed as an "interpretive rule" or a "policy statement," but allowing that dodge would upend Congress's carefully prescribed regimes for reviewing FTC orders.

Plaintiffs' principal case, *International Union v. Brock*, 783 F.2d 237 (D.C. Cir. 1986), does not help their argument. In that case, employers subject to Department of Labor reporting requirements sought review of a new statutory interpretation announced in the Department's decision to forgo an enforcement action. The D.C. Circuit held that the decision not to enforce was unreviewable, but the new statutory interpretation could be reviewed, because it had an "immediate and certain effect" on the reporting duties of employers and consultants. *Id.* at 246. But *International Union* does not show, as plaintiffs suggest, that any person may challenge any agency interpretation that affects him in some way.[2] One year after *International Union*, the Supreme Court rejected the "principle that if the agency gives a 'reviewable' reason for otherwise unreviewable action, the action becomes reviewable." *ICC v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 283 (1987). The D.C. Circuit later followed the approach of *Locomotive Engineers* in *Safe Energy Coalition of Michigan v. NRC*, 866 F.2d 1473 (D.C. Cir. 1989), where it rejected a challenge to an agency's legal interpretation announced in the context of a refusal to

---

[2] Indeed, the *International Union* court cautioned that "[i]n holding that an appropriate plaintiff may challenge an interpretation announced during an adjudication, the key term, of course, is '*appropriate*.'" 783 F.2d at 251 (emphasis added). Here, Congress has specified who is "appropriate" to challenge FTC adjudicative orders: persons subject to those orders. *See* 15 U.S.C. § 45(c). Congress deemed non-parties, like plaintiffs, inappropriate challengers. Moreover, the plaintiff in *International Union* was directly affected by the agency's position in the conduct of its business, unlike the plaintiffs here, who are at most *indirectly* affected by the adjudicative orders at issue. As the D.C. Circuit noted, there are "real and cognizable practical differences distinguishing an agency's announcement of how it will exercise its discretion, from an agency's announcement of what a citizen's duties are . . . ." 783 F.2d at 246.

take enforcement action. The court explained that a plaintiff could not "evade" the presumption that such decisions are unreviewable by "artificially carving out [an] antecedent legal issue." *Id.* at 1476.

After *Locomotive Engineers*, the D.C. Circuit has substantially limited the holding of *International Union*. Today, courts may review "an agency's statement of general enforcement policy" where it is "articulated . . . in some form of universal policy statement." *Crowley Caribbean Transport, Inc. v. Peña*, 37 F.3d 671, 676 (D.C. Cir. 1994). However, courts may *not* review "an agency's decision to decline enforcement in the context of an individual case." *Id.* (waiver denial was unreviewable whether construed as a determination to forgo enforcement or as an advisory opinion).

But even if plaintiffs had an unfettered right to challenge any policy statements or interpretive rules announced in adjudications (which they do not), they would still lack a right of review in this case. The orders at issue here were not "universal policy statements," but rather consent decrees resolving individual enforcement cases brought against six specific respondents. The orders contain no broad legal interpretations or statements of enforcement policy, but only specific agreed-upon remedies binding the particular parties to which they apply. *See, e.g.*, ECF No. 18-13 (GM order). Consent decrees such as these are "primarily a means by which parties settle their disputes without having to bear the financial and other costs of litigating," and they "may not dispose of the claims of a third party, and *a fortiori* may not impose duties or obligations on a third party." *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 528-29 (1986). Consequently, the orders at issue did not contain any policy statements or interpretive rules at all.

### C.  Plaintiffs Lack Article III Standing

Plaintiffs have not shown that they meet the constitutional requisites for standing.  Before the consent decrees at issue, certain used car sellers claimed that their vehicles were rigorously inspected for safety issues while failing to disclose that those vehicles were subject to unrepaired safety recalls.  The consent decrees bar six companies from making such advertising claims unless either (1) their cars are free of unrepaired safety recalls, or (2) the companies clearly disclose that some of their cars may have unrepaired recalls and explain how consumers can determine whether a vehicle is subject to such a recall.  Plaintiffs contend that these consent decrees will somehow lead to "millions" of unsafe used cars flooding the nation's roads, as used car dealers sell vehicles with unrepaired recalls.  Opp. 29-30.  They support that assertion with duplicative, essentially identical declarations of their officers and claim that "car dealers are now advertising and selling 'certified' used cars as 'safe' when such cars are demonstrably *not* safe" because they have one or more safety recalls.  Opp. 31 (emphasis in original).  They proclaim that the injury is redressable because if this Court invalidates the consent decrees, then "at least some" car dealers will "return to their prior practice" of voluntarily fixing recalled vehicles before sale.  Opp. 33.

These allegations do not establish Article III standing.  Because plaintiffs' claim of standing depends on the conduct of third parties, plaintiffs have "the burden of proving causation and redressability," even at "the motion to dismiss stage."  *AFGE, AFL-CIO v. Vilsack*, 118 F. Supp. 3d 292, 299 (D.D.C. 2015) (Jackson, J.), *aff'd*, 672 F. App'x 36 (D.C. Cir. 2016). "Allegations of *possible* future injury do not satisfy the requirements of Art[icle] III.  A threatened injury must be *certainly impending* to constitute injury in fact."  *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1294 (D.C. Cir. 2007) (quotation marks

and citation omitted; emphasis altered). In addition, that injury must be traceable to "the challenged acts of the [FTC]," rather than an "absent third party," such as car dealers. *Microwave Acquisition Corp. v. FCC*, 145 F.3d 1410, 1412 (D.C. Cir. 1998). As a result, plaintiffs cannot establish standing simply by asserting (at Opp. 30-31) that the sale of unrepaired vehicles poses a consumer safety hazard. Indeed, plaintiffs admit that regardless of the FTC's actions here to stop specific deceptive advertising claims, used-car dealers may sell cars with unrepaired recalls, because federal law does not "require[] all car dealers to ensure that safety recall repairs are in fact performed on used cars." Opp. 7.[3]

Thus, the question in this case is whether the FTC consent decrees at issue will produce a "*substantially* increased risk of harm" from unsafe cars on the road. *Pub. Citizen*, 489 F.3d at 1295-96 (adopting a "very strict understanding of what increases in risk . . . can count as 'substantial'") (emphasis in original). On this point, plaintiffs theorize that the consent decrees will cause even more consumers to "unwittingly purchase" used cars advertised as "safe" when they are in fact "subject to unrepaired safety recalls." Opp. 3. This assertion—which turns entirely on the actions of used car dealers and individual consumers—is speculation. It is equally plausible that the consent decrees, which prohibit safety-related claims without clear and conspicuous disclosures regarding recalls, will *inhibit* the harms that plaintiffs fear. The FTC explained, for example, that the agreed-upon remedies "will help empower consumers to make more informed and safer purchasing decisions in a market that, absent a change in federal law, continues to include cars subject to open recalls." *See* ECF No. 18-17, Statement of the Federal Trade Commission Concerning Auto Recall Advertising Cases, 81 Fed. Reg. 93,926, 93,928 (Dec. 22, 2016). Thus, the required disclosures will "incentivize[]" dealers "to repair open

---

[3] Plaintiffs themselves rely on a GAO report from 2011—years *before* the consent decrees at issue—concluding that car dealers were already creating safety risks by selling cars with unrepaired recalls. Opp. 7.

recalls in the cars they advertise," and allow dealers who repair all of their cars to gain a "competitive advantage[]" by making "truthful claims that they are recall-free." *Id.* And when a dealer is unable to repair all open recalls, it must "prominently disclose" this fact without "misrepresent[ing] the recall status or safety of [its] cars." *Id.*

Plaintiffs also claim that the consent decrees will injure their members by forcing them to spend time or money to "ascertain whether" a vehicle they purchase is subject to an open recall and then "have the vehicle repaired." Opp. 31. These alleged injuries, however, result not from any action of the FTC, but from the sale of used cars with open recalls, a practice that federal auto safety law does not prohibit. And to the extent that the FTC's settlements result in consumers learning for the first time that they need to investigate their cars' recall status and get those cars repaired, that is a *benefit*, not an injury.

In addition, plaintiffs' theory of causation relies on an unsubstantiated prediction that third-party dealers will respond to the consent decrees by "chang[ing] their practices" to sell vehicles as "safe" even though they are subject to recall. Opp. 36-37. However, dealers *already* engaged in similar allegedly deceptive practices even before the consent decrees—which otherwise would have been unnecessary. The decrees *remedied* the deception by requiring those dealers to disclose that their vehicles may be subject to recall. Nor have plaintiffs shown that the consent decrees will induce *additional* dealers to sell used cars as "safe" when they are subject to recall. In fact, plaintiffs' own exhibit reports that seven auto manufacturers have announced that notwithstanding the consent decrees they do not plan to sell used cars with open recalls. *See* ECF No. 18-16 at 4 (newspaper article). And, as discussed below (*infra*, p. 11), the two sellers that plaintiffs describe as changing their practices appear to have done so (in large part) for reasons unrelated to the FTC. Plaintiffs have thus failed to show that "independent choices" of

"third part[ies] . . . 'will be made in such manner as to produce causation.'" *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 938 (D.C. Cir. 2004) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992)).

Plaintiffs get no help from the D.C. Circuit's statement that a plaintiff may meet its burden to show harm when "the challenged agency action authorizes . . . [harmful] conduct [that] would allegedly be illegal otherwise." Opp. 32, quoting *Animal Legal Def. Fund v. Glickman*, 154 F.3d 426, 440 (D.C. Cir. 1998) (en banc). The consent decrees here did not authorize illegal conduct; in fact, they prohibited the deceptive advertising alleged in these matters.[4] As the Commission—the expert agency that administers the FTC Act and the Used Car Rule—found, the settlement remedies facilitate "truthful[] advertising" and prevent dealers from "misrepresent[ing] the recall status or safety of their cars." 81 Fed. Reg. at 93,928. Plaintiffs' argument appears to be that the FTC "authorized" illegal conduct by failing to obtain a settlement containing more severe injunctive remedies. By that logic, third parties would have standing to challenge every agency settlement they find insufficiently punitive.[5]

Finally, even if plaintiffs could show a non-speculative injury traceable to the FTC's conduct, we showed that vacating the orders under review would not redress the claimed injuries. Mot. 9-10. "[E]ven at the pleading stage, a party must make factual allegations showing that the relief it seeks will be likely to redress the injury." *Renal Physicians Ass'n v. HHS*, 489 F.3d 1267, 1276 (D.C. Cir. 2007). Granting plaintiffs the relief they request here—vacating the consent decrees—would simply allow the six car sellers at issue to unlawfully represent their

---

[4] Plaintiffs' contention that the consent decree remedies violate the FTC Act is a "conclusion of law," which the Court "need not accept," even at the pleadings stage. *See AFGE*, 118 F. Supp. 3d at 300.

[5] Even assuming that the challenged agency action—acceptance of consent decrees—authorized car dealers to make advertising claims that would be illegal otherwise, plaintiffs still must establish that those claims have created imminent consumer-safety risks, which (as discussed) they have failed to do.

cars as safe or rigorously inspected without clearly disclosing open recalls, and thus would not redress any injury. In fact, plaintiffs could get the ultimate relief they seek—an outright prohibition on describing any car with open recalls as "certified"—only if after a reversal the FTC: (1) exercised its discretion to bring a new enforcement case alleging such conduct to be unlawful, (2) litigated the matter, (3) secured such relief in the administrative tribunal, and then (4) prevailed in any appeal by the respondent car dealers. Plaintiffs thus cannot establish that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (quotation omitted).

Plaintiffs provide no effective response. They claim that if the consent decrees are vacated, two large used-car sellers (Ford and AutoNation)—not parties to the FTC actions here—will "return to their prior practices" of repairing all recalled vehicles before selling them. *See* Opp. 33. But they have hardly proved such a thing; to the contrary, the news article on which plaintiffs' declaration relies suggests that AutoNation changed its practices for *several* reasons, including "other anticipated regulatory rollbacks," a lack of Takata airbag replacement parts, and decreased corporate earnings. ECF No. 18-22 at ¶ 5 (Shahan Decl.), quoting ECF No. 18-16 at 5 (article).[6] Thus, plaintiffs' own evidence shows that the changing industry practices had multiple causes other than the FTC—and thus that striking down the consent decrees likely will not simply restore the old practices. Even assuming, *arguendo*, that the consent decrees were a "substantial contributing factor" behind plaintiffs' alleged harms, this is a case in which

---

[6] Although the article does not discuss Ford's precise reasons for the policy change, it explains that the "Takata airbag recall is unprecedented in its scope . . . [and] complexity," and that "[d]ealers simply can't fix everything at once, because there are not enough replacement parts." ECF No. 18-16 at 3.

"the undoing of the governmental action will not undo the harm, because the new status quo is held in place by other forces." *Renal Physicians*, 489 F.3d at 1278.[7]

### D. The Consent Decrees Are Not Subject To Review Because They Are The Product Of The FTC's Prosecutorial Discretion

The APA bars review of an "agency action [that] is committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *see* Mot. 10-11. Judicial review is not possible when the statute under which an agency acts "is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). Under *Chaney*, courts ordinarily may not review an agency's decisions to settle pending enforcement actions, because such actions "implicate[] a number of factors bearing on the agency's enforcement authority, including policy priorities, allocation of resources, and likelihood of success"— subjects that the agency is "far better equipped than the courts to deal with." *Ass'n of Irritated Residents v. EPA*, 494 F.3d 1027, 1035 (D.C. Cir. 2007) (quoting *Chaney*, 470 U.S. at 831-32). Agencies thus typically have "complete discretion" when deciding whether or not to accept a settlement. *Schering Corp. v. Heckler*, 779 F.2d 683, 687 (D.C. Cir. 1985) (quotation marks and citation omitted).

Plaintiffs attempt to escape the principle of *Chaney* on the ground that they challenge not the Commission's decision to settle its enforcement proceedings but rather the underlying rationale of the settlements. Their theory is that the settlements amount to a general pronouncement that it is not a deceptive practice to advertise and sell used cars as "safe,"

---

[7] Plaintiffs go even further afield in suggesting that (1) the FTC consent decrees "severely jeopardized" state consumer-protection and product-liability statutes, and (2) invalidating the decrees would return those statutes to their proper place. *See* Opp. 33-34. While Plaintiffs describe state laws forbidding car dealers from selling vehicles with open recalls, they offer no plausible reason why the FTC consent decrees had any effect on those laws. Opp. 34 nn. 10 & 11. An FTC settlement cannot bind third parties (see p. 6, *supra*) and nothing in these decrees even suggests that they supersede state law.

"repaired for safety," or "subject to rigorous inspection" when some such cars have an unrepaired recall. Opp. 18. As discussed in Part B above, the Commission said no such thing: it merely settled pending administrative litigation with specific respondents. And even if the consent decrees at issue *had* contained legal interpretations or policy discussions, that alone would not make them subject to review. As noted, the Supreme Court has rejected "the principle that if the agency gives a 'reviewable' reason for otherwise unreviewable action, the action becomes reviewable." *Locomotive Eng'rs*, 482 U.S. at 283. The Court made clear that the principle applies especially strongly to decisions about enforcement.[8] Because courts may not "carv[e] reviewable legal rulings out from the middle of non-reviewable actions," they may not review "an agency's decision to decline enforcement in the context of an individual case." *Crowley*, 37 F.3d at 676.

Nonetheless, plaintiffs contend that the FTC consent decrees are reviewable because they condone deceptive practices and therefore "violate both the FTC Act and the . . . Used Car Rule." Opp. 19-20, 24-25. But an agency does not "violate" its enabling statute or implementing regulations whenever it decides to settle a case, pursue certain remedies rather than others, or forgo enforcement entirely. To the contrary, the FTC Act expressly vests the Commission with broad prosecutorial discretion: it authorizes the agency to file a complaint when it has "reason to believe" the law is being violated and "it shall appear to the Commission that a proceeding . . . would be to the interest of the public." 15 U.S.C. § 45(b). The statute does not place any judicially enforceable limits on the "reason to believe" or "interest of the public"

---

[8] "To demonstrate the falsity of that proposition it is enough to observe that a common reason for failure to prosecute an alleged criminal violation is the prosecutor's belief (sometimes publicly stated) that the law will not sustain a conviction. That is surely an eminently 'reviewable' proposition, in the sense that courts are well qualified to consider the point; yet it is entirely clear that the refusal to prosecute cannot be the subject of judicial review." *Locomotive Eng'rs*, 482 U.S. at 283.

standards and does not articulate *any* standards governing the Commission's settlement of an administrative adjudication through a consent decree.

Thus, "*Chaney*'s presumption of non-reviewability" applies here because "the governing statute's enforcement provision describes the agency's role as discretionary." *Irritated Residents*, 494 F.3d at 1032. The FTC Act does not mandate "that violators must be pursued in every case, or that one particular enforcement strategy must be chosen over another." *Id.* at 1033. Instead, the FTC has discretion to decide whether it has reason to believe that particular business practices violate the law and whether specific remedies would best suit the public interest. *Cf. Elec. Privacy Info. Ctr. v. FTC*, 844 F. Supp. 2d 98, 106 (D.D.C. 2012) ("At bottom, the FTC's decision whether to take action with respect to a potential violation of the Consent Order is a quintessential enforcement decision that is committed to the agency's discretion and is not subject to judicial review."), *aff'd*, No. 12-5054, 2012 WL 1155661 (D.C. Cir. Mar. 5, 2012) (per curiam).

Plaintiffs incorrectly rely on cases where agency settlements violated specific statutory directives, such as mandatory competitive bidding procedures[9] or "procedural mechanisms for relinquishing title or issuing rights-of-way."[10] *See* Opp. 20-21. This case is fundamentally different from such precedents because, unlike federal procurement or land-management laws, the FTC Act does not constrain the Commission's exercise of prosecutorial discretion. At bottom, plaintiffs' grievance is simply that the FTC has not "carr[ied] out [its] delegated powers with sufficient vigor," but courts are not the "most appropriate body to police this aspect of [agencies'] performance." *See Chaney*, 470 U.S. at 834.

---

[9] *See Exec. Bus. Media, Inc. v. Dep't of Def.*, 3 F.3d 759, 762-65 (4th Cir. 1993); *Scanwell Labs., Inc. v. Shaffer*, 424 F.2d 859, 874 (D.C. Cir. 1970).

[10] *See United States v. Carpenter*, 526 F.3d 1237, 1242 (9th Cir. 2008).

## CONCLUSION

For all the foregoing reasons, the Court should dismiss the amended complaint.

                              Respectfully submitted,

                              DAVID C. SHONKA
                              Acting General Counsel

                              JOEL MARCUS
                              Deputy General Counsel for Litigation

                              LESLIE RICE MELMAN
                              Assistant General Counsel for Litigation
                              D.C. Bar No. 266783

                              */s/ Bradley Dax Grossman*
                              BRADLEY DAX GROSSMAN
                              Attorney
                              Mass. Bar No. 669358

                              FEDERAL TRADE COMMISSION
                              600 Pennsylvania Ave., N.W.
                              Washington, D.C. 20580
                              Tel: (202) 326-2478 (Melman)
                                    (202) 326-2994 (Grossman)
                              Fax: (202) 326-2477
                              lmelman@ftc.gov
                              bgrossman@ftc.gov

**CERTIFICATE OF SERVICE**

    I hereby certify that on October 27, 2017 the foregoing Reply Memorandum in Support of Federal Trade Commission's Motion to Dismiss was filed electronically with the Clerk, United States District Court for the District of Columbia.  Counsel for plaintiffs will be served by the CM/ECF system.

                                                                        /s/*Bradley Dax Grossman*
                                                                        BRADLEY DAX GROSSMAN