UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| CONSUMERS FOR AUTO RELIABILITY AND SAFETY, et al., ) ) ) Plaintiffs, ) ) v. ) ) FEDERAL TRADE COMMISSION, ) ) Defendant. ) | No. 1:17-cv-540-KBJ |

## MOTION FOR LEAVE TO FILE NEW MATERIALS

Pursuant to LCvR 7, Plaintiffs respectfully request leave to file two new documents that demonstrate, using rigorous empirical data, that the actions of the Federal Trade Commission ("FTC") challenged in this litigation are leading to widespread and misleading, deceptive sales of hazardous, defective, recalled used cars advertised as "safe," "repaired for safety," having passed a "rigorous inspection," and qualifying as "certified" vehicles, despite those cars being subject to unresolved safety recalls. These documents directly support Plaintiffs' allegations that FTC's actions are increasing the risk of harm to Plaintiffs, their members, and the public at large by subjecting buyers of used cars to misleading claims that cars are safe when, in fact, they are not. Moreover, these studies are directly responsive to concerns raised by Defendant at the hearing on Defendant's motion to dismiss, because the studies constitute the "serious study or survey" of the used car market that Defendant asserted was lacking. Hearing Transcript ("Tr.") at 26.[1]

---

[1] As Plaintiffs explained at the argument, the allegations in the Complaint are sufficient to demonstrate standing and to defeat Defendant's motion to dismiss. In other words, by filing these studies, Plaintiffs do not concede that Defendant was correct to call for a more "serious study or survey" than those discussed in the Complaint. Nevertheless, the studies satisfy any call by Defendant for a "serious study or survey" and are indisputably germane to the Court's resolution of the motion to dismiss.

On September 18, 2018, the Court held oral argument. In response to Plaintiffs' allegations that a series of consent decrees between FTC, General Motors, and five other large dealership chains—which authorized the marketing and sale of used cars still subject to unresolved safety recalls as "safe," "repaired for safety," having passed a "rigorous inspection," and qualified as "certified" vehicles—are effectively an arbitrary and capricious policy that is wreaking sweeping changes on the used car market, endangering the safety of Plaintiffs' members and the public, Defendant insisted that Plaintiffs' alleged harms were merely "speculative" in the context of Article III standing. In particular, FTC stressed that Plaintiffs "are basing [their allegations of harm resulting from the challenged consent decrees] on a *New York Times* article and not a serious study or survey." Tr. at 26.; *id.* at 26-27 ("This is simply speculative and not based on any serious study of the market."); *id.* at 60 (arguing that "nothing that they presented to the Commission looked at all like a serious study of the industry").

In the past eighteen months since the oral argument, however, new empirical data has only further affirmed the heavy reliance by the car dealership industry on FTC's arbitrary policy of using consent decrees to approve of misleading, deceptive claims to consumers. This new information demonstrates that the six consent decrees between FTC, General Motors, and five of the nation's largest, publicly traded car dealership chains collectively allow the entire industry to make representations about the mechanical condition of used vehicles offered for sale that are patently false and misleading, to the severe detriment of Plaintiffs, their members, and the consumer public at large. Indeed, the new information shows that FTC's new policy is, in fact, leading car dealers (both those subject to the consent decrees and those not expressly bound by them) to offer many more used vehicles for sale subject to deceptive and misleading representations about the mechanical condition and safety of these cars than was the case before

FTC entered into these consent decrees. FTC's policy allows these dealers to advertise and sell recalled cars as "safe," "repaired for safety issues," "subject to a rigorous inspection," and qualifying to be sold as "certified" when, in fact, these corporate dealerships have not actually obtained the free repairs necessary to make these vehicles safe—and the new information filed today shows that high-volume car dealership chains are doing exactly that.

First, nationally recognized consumer safety organizations recently completed a detailed analysis of auto industry data, which focused on the fundamental change in practice at AutoNation dealerships in the United States in response to the consent decrees challenged in this case. *See* Exhibit A (*Unsafe Used Cars for Sale: Unrepaired Recalled Vehicles at AutoNation Dealerships* (Oct. 2019)). AutoNation—which was *not* the subject of any consent decree challenged in this case—sells hundreds of thousands of used cars each year (237,000 used cars in 2018 alone), and operates more than 290 franchised dealerships in 15 states. This new report explains in meticulous detail (using hard data) that FTC's new policy was a significant factor in opening the floodgates for AutoNation to offer for sale approximately 1 in 9 used cars with unrepaired safety recalls—some as "certified" vehicles that the dealers claimed had passed a rigorous inspection, and with misleading advertising claims such as: "we take the risk out of buying a pre-owned vehicle" and these "pre-owned" vehicles are "worry-free." *See* Exhibit A at 2-5. In light of AutoNation's sale of 237,000 used cars each year, this translates into approximately 26,333 *additional* unrepaired used cars sold every single year, without even accounting for other dealerships that, like AutoNation, have changed their behavior to conform to FTC's new policy. Because these tens of thousands of unrepaired used cars flooding the market each year are "[v]ehicles with defects subject to safety recalls—including malfunctioning Takata airbags and General Motors ignition switches—[which] have been responsible for

thousands of injuries and deaths," *id.* at 1, there is nothing speculative about the increased, and potentially lethal, risk posed to Plaintiffs, their members, and the consumer public at large. Before FTC adopted this policy, such false advertising and deceptive sales were not lawful because marketing a car as "safe" when it is subject to an unresolved safety recall is plainly misleading and violated FTC's own Used Car Rule; now, however, at least an additional tens of thousands of unsafe vehicles are in fact being deceptively offered for sale nationwide, every year.

Second, Consumer Reports—an independent third-party consumer research organization—recently completed its own evaluation of car dealers' practice of selling used cars with unrepaired safety recalls. *See* Exhibit B (Consumer Reports, *The Hidden Risks of Used Cars* (Apr. 2019)). Consumer Reports investigated 826 used cars which auto dealers offered for sale of specific makes, models, and years, and found that 119 vehicles (14.4% of vehicles surveyed) had a total of 186 unrepaired safety recalls. *Id.* This investigation and its results exemplify the inherent problems with the major increase in sales of unrepaired used cars subject to safety recalls advertised and represented as "worry-free," without "risk," and having passed a "rigorous inspection"—as is occurring in response to FTC's consent decrees, such as with AutoNation's about-face—and it is clear that many thousands of hazardous used vehicles are now being offered for sale each year that, prior to the challenged federal actions, would *never* have reached the marketplace without these dealers first performing the free safety recall repairs necessary to make them safe.

By any measure, this significantly increased risk of injury to Plaintiffs' members and the public at large is sufficient to establish standing to challenge FTC's arbitrary, capricious, and unlawful actions, which have led to a Russian roulette in which Plaintiffs' members and the

public are being told that vehicles are "safe," "repaired for safety," passed a "rigorous inspection," and are qualified to be sold as "certified" vehicles, when in reality a significant proportion of them are in fact unsafe and could inflict deadly harm. *See, e.g.*, *Natural Res. Def. Council v. Envtl. Prot. Agency*, 464 F.3d 1, 6-7 (D.C. Cir. 2006) (acknowledging that "[e]nvironmental and health injuries often are purely probabilistic," and finding that an environmental organization had standing to challenge a regulation that would allegedly result in an increased risk that one in 200,000 people would develop skin cancer).

For these reasons, Plaintiffs respectfully request that the Court grant leave to file these two documents and that the Court consider these materials in resolving the motion to dismiss.[2]

Respectfully submitted,

*William S. Eubanks II*
William S. Eubanks II
D.C. Bar Number 987036
2601 S. Lemay Ave., Unit 7-240
Fort Collins, CO 80525
(970) 703-6060
bill@eubankslegal.com

Michael Landis (D.C. Bar No. CO0087)
The Center for Public Interest Research, Inc.
1543 Wazee St., Ste. 400
Denver, CO 80202
(303) 573-5995 ext. 389
mlandis@publicinterestnetwork.org

*Counsel for Plaintiffs*

---

[2] Because this motion relates back to the motion to dismiss filed by FTC, Plaintiffs did not seek the position of Defendant pursuant to LCvR 7(m) given the dispositive nature of the motion.